UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ASIA BEAMON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALA'A HAMED )<br>)<br>Defendant. ) | Case No. 2:19-cv-506 |

**OPINION AND ORDER**

This matter is before the court on the Motion to Dismiss [DE 24] filed by the defendant, Ala'a Hamed, on August 17, 2020. For the following reasons, the motion is **GRANTED in part and DENIED in part.**

*Background*

The plaintiff, Asia Beamon, filed this action against the defendant, Ala'a Hamed, individually, alleging violations of the Civil Rights Act, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and Indiana state law.

On July 27, 2019, the plaintiff was involved in a traffic accident. The defendant, an Indiana State Police Officer, was called to the scene of the accident. When he arrived, the defendant asked the plaintiff to submit a breath alcohol test, but she refused. The plaintiff eventually was taken to a nearby hospital to check for possible injuries caused by the accident.

Once the plaintiff arrived at the hospital, the parties' versions of events that followed are vastly different. The plaintiff alleges that she was arrested without a warrant and without probable cause. She states that the defendant attempted to coerce her into having her blood drawn but that she refused to allow the blood draw without first seeing a warrant. The defendant

then returned and stated he had a warrant though he never showed it to the plaintiff. The plaintiff alleges that the defendant and a nurse used unreasonable force in order to obtain the warrantless blood draw. The plaintiff alleges that defendant used racial slurs and then proceeded to punch her in the right eye. The punch allegedly fractured her right orbital lobe, causing her nose to bleed, facial swelling, and "oozing" from her right eye. The plaintiff claims that in an effort to cover up his misconduct, the defendant transferred her to Lake County Jail without providing treatment for her eye injury. She was released from the Lake County Jail on July 29, 2019, after the jail confirmed that no charges were filed against her. After her release, the plaintiff went to the hospital for the injury to her eye and learned that she would need surgery.

As a result of the above described events, on December 30, 2019, the plaintiff filed a complaint against the defendant. The complaint alleges five violations of 42 U.S.C. § 1983: excessive force, illegal search, false arrest, denial of medical care, and Fourth Amendment retaliation; and four Indiana state law claims: indemnification, intentional infliction of emotional distress, assault, and battery. Formal criminal charges were not filed against the plaintiff until July 14, 2020, more than six months after this lawsuit commenced.

In lieu of filing an answer, the defendant filed this Motion to Dismiss [DE 24] on August 17, 2020. In support of his motion, the defendant attached four exhibits from the state court: an information, a probable cause affidavit, an order finding probable cause, and an arrest warrant. The defendant argues that the complaint should be dismissed because this court lacks subject matter jurisdiction and the complaint fails to state a claim upon which relief can be granted. Specifically, the defendant argues that he is entitled to qualified immunity for the § 1983 claims. In the alternative, and pursuant to the *Younger* abstention doctrine, the defendant states that the court should issue a stay until the plaintiff's state criminal proceedings are concluded. Lastly,

the defendant argues that if the court does dismiss the 42 U.S.C. § 1983 claims, the state law claims should be dismissed pursuant the Supreme Court's holding in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

*Discussion*

As an initial matter, the plaintiff argues that the defendant's attachment of the information, probable cause affidavit, order finding probable cause, and arrest warrant to the motion to dismiss converts the motion into a motion for summary judgment. In which case, the defendant's converted motion is not in compliance with the summary judgment guidelines laid out in **N.D. Ind. L.R. 56-1**.

**Federal Rule of Civil Procedure 12(d)** provides that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, the Seventh Circuit has recognized a narrow exception to this rule. District courts are entitled to take judicial notice of outside "matters of public record without converting a motion for failure to state a claim into a motion for summary judgement" if they are "not subject to reasonable dispute and either generally known within territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." **General Elec. Capitol Corp. v. Lease Resolution Corp.**, 128 F.3d 1074, 1080 (7th Cir. 1997); **Ennenga v. Starns**, 677 F.3d 766, 773-74 (7th Cir. 2012).

While acceptable outside matters have included public court documents, "courts generally cannot take judicial notice findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed." 677 F.3d at 773-74; **Lopez v. Pastrick**, 2011 WL 2357829, at *4 (N.D. Ind. June 8, 2011) (internal quotations

omitted); ***Opoka v. I.N.S.***, 94 F.3d 392, 395 (7th Cir. 1996); ***Fedex Ground Package System, Inc., Employment Practices Litig.***, 2010 WL 1253891, at *6 (N.D. Ind. Mar. 29, 2010) (finding that "the court can take judicial notice of filings in other proceedings to establish the fact of such litigation and related filings"); ***ABN AMRO, Inc. v. Capital Int'l Ltd.***, 2007 WL 845046, at *9 (N.D. Ill. March 16, 2007) ("judicial notice is generally not for the truth of the matters asserted in a court document"). Ultimately, the Seventh Circuit cautions that "courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." ***General Elec. Capitol Corp.***, 128 F.3d at 1081.

The defendant argues that the narrow exception permitting matters of public record applies here and therefore the motion does not have to be analyzed as a motion for summary judgement. While district courts are permitted to take judicial notice of public court documents, the Seventh Circuit points to the Federal Rules of Evidence as guidance on this issue, and this court agrees. **Federal Rule of Evidence 201** describes the kinds of facts that may be judicially noticed as follows: "(1) facts that are generally known within the trial court's discretion; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." ***Mayes v. City of Hammond, Ind.***, 2006 WL 1765407, at *5 (N.D. Ind. June 21, 2006) (Cherry, Magistrate Judge) (taking judicial notice of a criminal conviction but declining to take judicial notice of underlying DNA evidence or its validity).

The defendant is seeking to have the court take judicial notice of the pleadings filed in the criminal case that involves the events which transpired on July 21, 2019. First, there is a difference between taking judicial notice of pleadings filed and the facts contained in those documents. Next, the contents of the documents are disputed as represented by the vastly

different versions of events the parties have given in the pleadings associated with this motion. Also, the defendant is relying on the documents to prove the truth of the facts asserted therein to support the motion to dismiss. Lastly, the documents themselves are not the type that courts have taken judicial notice in the past. *See* **Swanigan v. City of Chi**., 881 F.3d 557 (7th Cir. 2019) (taking judicial notice of facts from a prior proceeding within the same case); **Estate of Brown v. Arc Music Group**, 523 Fed.Appx. 407, 410 (7th Cir. 2013) (taking judicial notice of a settlement agreement); **Scholes v. Lehmann**, 56 F.3d 750, 762 (7th Cir. 1995) (taking judicial notice of facts recited in a plea agreement); **Philips Med. Sys. Int'l v. Bruetman**, 982 F.2d 211, 215 (7th Cir. 1992) (taking judicial notice of a default judgment); **Ryan v. Phillip Morris USA, Inc.**, 2007 WL 270119, at *1 (N.D. Ind. Jan. 26, 2007) (taking judicial notice of a probate file). Therefore, the court declines to take judicial notice of the documents attached to the defendant's motion to dismiss. Since the court declines to take judicial notice, the motion will be viewed as a Rule 12(b)(6) motion to dismiss and analyzed only on the contents therein.

The plaintiff has asserted four violations of 42 U.S.C. § 1983: excessive force, illegal search, false arrest, denial of medical care, and Fourth Amendment retaliation. She also has alleged four Indiana state law claims: indemnification, intentional infliction of emotional distress, assault, and battery. As to the § 1983 claims, the defendant argues that he is entitled to qualified immunity because his actions on July 27, 2019 did not violate "clearly established constitutional rights."

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Pearson v. Callahan**, 555 U.S. 223, 231 (2009) (quoting **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982)). The Supreme Court has

5

mandated a two-step process for resolving qualified immunity claims in ***Saucier v. Katz***, 533 U.S. 194, 199 (2001). First, whether a constitutional right has been violated on the facts alleged, and second, assuming a violation is established, whether the right was clearly established at the time of the alleged violation. 533 U.S. 194 at 200; *see* ***Pearson***, 555 U.S. at 231 (explaining "whether the facts alleged show the officer's conduct violated a constitutional right … *must* be the initial inquiry in every qualified immunity case") (internal quotations omitted).

However, "because a qualified immunity defense so clearly depends on the facts of a case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." ***Reed v. Palmer***, 906 F.3d 540, 548 (7th Cir. 2018) (internal quotations omitted); ***Alvarado v. Litscher***, 267 F.3d 648, 651 (7th Cir. 2001). Though, qualified immunity may be appropriate at the pleadings stage if "the plaintiff asserts the violation of a broad constitutional right that has not been articulated at the time the violation is alleged to have occurred." ***Hardeman v. Curran***, 933 F.3d 816, 823 (7th Cir. 2019) (quoting ***Jacobs v. City of Chicago***, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Since a Rule 12(b)(6) motion normally is based on the complaint itself, "the plaintiff need only state a claim to relief that is plausible on its face." ***Reed***, 906 F.3d at 548. Therefore, all the plaintiff must do is "include enough details about the subject matter of the case to present a story that holds together." ***Reed***, 906 F.3d at 548 (internal quotations omitted).

All that has been filed in this case is the complaint and this motion to dismiss. Therefore, closely analyzing the two-step process for resolving the defendant's qualified immunity defense is premature. The court is left with determining whether the plaintiff's § 1983 claims are plausible on their face. The only facts before the court are those alleged in the complaint, which

6

the court is "obliged to accept as true." **Kernats v. O'Sullivan**, 35 F.3d 1171, 1175 (7th Cir. 1994).

**Federal Rule of Civil Procedure 12(b)(6)** allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement" to show that a pleader is entitled to relief. *See* **Cincinnati Life Ins. Co. v. Beyrer**, 722 F.3d 939, 946 (7th Cir. 2013). The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Iqbal**, 556 U.S. at 678 (quoting **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570); **Cincinnati Life Ins.**, 722 F.3d at 946 ("The primary purpose of [Fed.R.Civ.P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims") (quoting **Stanard v. Nygren**, 658 F.3d 792, 797 (7th Cir. 2011)); **Peele v. Clifford Burch**, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate language did not satisfy the requirements of Rule 8); **Joren v. Napolitano**, 633 F.3d. 1144, 1146 (7th Cir. 2011). This pleading standard applies to all civil matters. **Iqbal**, 556 U.S. at 684.

The decision in **Iqbal** discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by **Twombly**. *See* **Twombly**, 550 U.S. at 555 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the

speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint—"[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient. *Iqbal*, 556 U.S. at 678. Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. If the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). *Iqbal*, 556 U.S. at 678–79; see **Brown v. JP Morgan Chase Bank**, 2009 WL 1761101, at *1 (7th Cir. June 23, 2009) (defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability). The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 556 U.S. at 678–79; **Bonte v. U.S. Bank, N.A.**, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. **Murphy v. Walker**, 51 F.3d 714, 717 (7th Cir. 1995); **Maxie v. Wal-Mart Store**, 2009 WL 1766686, at *2 (N.D. Ind. June 19, 2009) (same); **Banks v. Montgomery**, 2009 WL 1657465, at *1 (N.D. Ind. June 11, 2009) (same).

42 U.S.C. § 1983 provides that "a person may not be deprived of any constitutional right by an individual acting under color of state law … authoriz[ing] claimants to sue persons in their individual capacities who are alleged to have violated such rights." **Lewis v. Downey**, 581 F.3d 467, 472 (7th Cir. 2009). Fourth Amendment claims of excessive force are analyzed using an objective reasonableness standard. **Plumhoff v. Rickard**, 572 U.S. 765 (2014). In order to state a valid excessive force claim, the plaintiff must "identify the specific conduct of the officer that is alleged to be excessive and unreasonable; the fact of an injury while in police custody is not

8

enough." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864 (7th Cir. 2010). The plaintiff has established a plausible claim for excessive force by alleging that the defendant used objectively unreasonable force and caused her harm. Specifically, she claims that the defendant punched her in the face while she was handcuffed to the hospital bed because she objected to having her blood drawn without first being shown a warrant, causing a fracture to her right orbital lobe.

Next, the plaintiff alleges that the defendant falsely arrested her as he did not have probable cause to do so and no warrant was obtained. Specifically, she alleges that immediately before and as she was being arrested, she was not violating any laws, rules, or ordinances. The Fourth Amendment to the U.S. Constitution provides in relevant part "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." **U.S. Const. amend. IV**. For the same reasons, the plaintiff alleges that the defendant illegally searched her because her blood was drawn without probable cause or her consent, and before a warrant was obtained. Therefore, the plaintiff has adequately established claims for false arrest and illegal search.

The plaintiff also claims that the defendant committed Fourth Amendment retaliation when he punched her in the eye for exercising her right to be free from an unreasonable search, refusing to submit to a blood draw without a warrant or probable cause. The plaintiff cites the test employed in *Gomez v. Randle*, 680 F.3d 859 (7th Cir. 2012), for determining whether retaliation occurred. However, that test is for First Amendment retaliation. The court notes that the plaintiff altered the wording of the test to make it more general than just involving the First

9

Amendment, but still cited the Seventh Circuit. Therefore, for purposes of this claim, the court will assume that the plaintiff is raising a First Amendment retaliation claim.[1]

In order to adequately plead a First Amendment retaliation claim, the plaintiff must show that she (1) engaged in an activity protected by the First Amendment; (2) she suffered a deprivation that would likely defer First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. ***Gomez v. Randle***, 680 F.3d at 866. The plaintiff argues that she has stated a valid claim for retaliation because she alleges that she was punched in the face for not submitting to a blood draw without first seeing a warrant. The activity that the plaintiff was engaged in, declining to have her blood drawn without a warrant or probable cause, is constitutionally protected, however it is not protected by the First Amendment. The plaintiff's claim for retaliation is insufficiently plead and, frankly, far reaching. Accordingly, count V of the complaint is **DISMISSED**.

The last § 1983 violation that the plaintiff alleges is denial of medical care. Challenges to conditions of confinement are governed by the Fourth Amendment. *See* ***King v. Kramer***, 763 F.3d 635, 639 (7th Cir. 2014). In order to establish a Fourth Amendment denial of medical care claim, the plaintiff must show that the defendant's failure to provide medical care to her was objectively unreasonable and it caused her harm. ***Williams v. Rodriguez***, 509 F.3d 392, 401 (7th Cir. 2007); ***Rosen v. King***, 913 F.Supp.2d 666, 676 (N.D. Ind. 2012). The plaintiff claims that she was at the hospital when the defendant punched her in the eye, therefore obtaining medical treatment would have been entirely minimal. However, the defendant acted objectively

---

[1] The Seventh Circuit dismissed a claim alleging a due process violation where the defendant police officer fabricated evidence and withheld exculpatory evidence in an effort to detain the plaintiff pending trial because the alleged violation was one of the Fourth Amendment and the plaintiff only "add[ed] a due process claim to the mix just to get another bite at the apple." ***Young v. City of Chicago***, __ F.3d __, 2021 WL 403899 (7th Cir. 2021).

unreasonably when he caused her to be taken from the hospital, where she could have been treated, to Lake County Jail where she did not receive any treatment. The plaintiff claims that because of the defendant's denial of medical care, she had a fracture that went untreated for longer than necessary, required multiple surgeries to correct, and put her at risk for lifelong impairment. Accordingly, the plaintiff has sufficiently plead a claim for Fourth Amendment denial of medical care.

In addition to the federal claims, the plaintiff has also alleged four Indiana state law claims: indemnification, intentional infliction of emotional distress (IIED), assault, and battery. The defendant argues that since he is entitled to qualified immunity as to the § 1983 claims, the remaining state law claims should be dismissed for lack of subject matter jurisdiction. However, as discussed above, the defendant is not entitled to qualified immunity as to the § 1983 claims, therefore this court has supplemental jurisdiction over the plaintiff's state law claims. *See* **28 U.S.C. § 1367(a)**.

The plaintiff filed a claim for indemnification pursuant to Ind. Code § 34-13-4-1, asking that the state of Indiana be found liable for any judgment that the plaintiff obtains, as well as attorney fees and costs. The state of Indiana is not a party to this case. Therefore, this claim is not valid. Nonetheless, had Indiana been named in the lawsuit, the claim would still not stand. Ind. Code § 34-13-4-1 states as follows:

> If a present or former public employee … is or could be subject to personal civil liability for a loss occurring because of a noncriminal actor omission within the scope of the public employee's employment which violates the civil rights laws of the United States, the governmental entity (when the governmental entity defends or has the opportunity to defend the public employee) shall, subject to IC 34-13-3-4, IC 34-13-3-14, IC 34-13-3-15, and IC 34-13-3-16, pay:
> 
> (1) any judgment (other than for punitive damages) of the claim or suit; or

>> (2) any judgment for punitive damages, compromise, or settlement of the claim or suit if:
>>> (A) the governor, in the case of a claim or suit against a state employee; or
>>> (B) the governing body of the political subdivision, in the case of a claim or suit against an employee of a political subdivision;
>> determines that paying the judgment for punitive damages, compromise, or settlement is in the best interest of the governmental entity. The governmental entity shall also pay all costs and fees incurred by or on behalf of a public employee in defense of the claim or suit.

**Ind. Code § 34-13-4-1**. But, it also states that "this chapter shall not be construed as … a waiver of the eleventh amendment to the Constitution of the United States; [or as] consent by the state of Indiana or its employees to be sued in any federal court …" **Ind. Code. 34-13-4-3**. The Eleventh Amendment guarantees that "an unconsenting [*sic*] State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." ***Board of Regents of Univ. of Wis. System v. Phoenix Intern. Software, Inc.***, 653 F.3d 488, 457 (7th Cir. 2011) (quoting ***Edelman v. Jordan***, 415 U.S. 651, 662-63 (1974)). For these reasons, count VI is **DISMISSED**.

Under Indiana law, in order to state a claim for IIED, the plaintiff must show that the defendant (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress to another. ***Branham v. Celadon Trucking Services, Inc.***, 744 N.E.2d 514, 523 (Ind. App. 2001). The plaintiff claims that the defendant's conduct on July 27, 2019, arresting and searching her without a warrant, punching her in the eye, and denying medical care, was extreme and outrageous, exceeding all bounds of human decency. The plaintiff claims that the defendant performed these actions with the intent of causing the plaintiff severe emotional distress or with the knowledge of the high probability that the conduct would cause such distress. Therefore, the plaintiff claims the defendant's conduct was the direct and

proximate cause of her severe emotional distress which included loss of sleep, mental anguish, and excruciating physical pain and emotional suffering. Accordingly, the plaintiff has stated a valid claim for IIED pursuant to Indiana law.

Next, the plaintiff claims that the defendant assaulted her when he intentionally placed her in reasonable apprehension of receiving offensive bodily contact which actually and proximately caused her injuries. Under Indiana law, an "assault is effectuated when one acts intending to cause an imminent apprehension of a harmful or offensive contact with another person," while battery "*is* the intentional harmful or offensive contact." **Sheehy v. Brady's This Is It**, 2013 WL 3319684, at *8 (N.D. Ind. July 1, 2013) (citing **Raess v. Doescher**, 883 N.E.2d 790, 794 (Ind. 2008) and **Knight v. Indiana Ins. Co.**, 871 N.E.2d 357, 362 (Ind.Ct.App.2007)). While the plaintiff does not specify, it is safe to assume that the assault and battery claims stem from the defendant punching the plaintiff in the nose because the plaintiff failed to comply with the blood draw. However, there are no facts alleged that show that the plaintiff knew or was in apprehension of physical contact immediately before the defendant punched her in the nose. For that reason, the count VIII is **DISMISSED** entirely, but the battery claim still stands as the defendant allegedly punched the plaintiff. *See* **Sheehy**, 2013 WL 3319684, at *8 (N.D. Ind. July 1, 2013) (finding that the plaintiff did not state a claim for assault because she did not allege that she knew or was in apprehension that the defendant was going to grab her arm, but she did state a claim for battery as the intentional harmful contact did occur). Lastly, in both her battery and assault claims, the plaintiff alleges that the "[d]efendant State is sued in this count pursuant to the doctrine of *respondent superior*." As discussed above, Indiana is not a party to this lawsuit. Therefore, count IX is **DISMISSED** as to the state of Indiana only.

As a final matter, the defendant asks that the case be stayed under ***Younger v. Harris***, 401 U.S. 37 (1971). ***Younger*** represents one of the so-called abstention doctrines based upon federalism and the comity federal courts must show for the state courts. Under ***Younger***, a federal court cannot enjoin a pending state criminal proceeding except under very narrow circumstances. For ***Younger*** to apply, the plaintiff in the federal case must be the defendant in the state criminal case. ***Younger*** also has been extended to state administrative proceedings which are quasi criminal in nature. That is not the case here. *See generally* ***Clark v. Henninger***, 2000 WL 968044, at *2 (7th Cir. 2000) (citing ***State of Ind. V. Haws***, 131 F.3d 1205, 1210 (7th Cir. 1997)); ***Crenshaw v. Supreme Court of Ind.***, 170 F.3d 725, 728 (7th Cir. 1999); ***Majors v. Engelbrecht***, 149 F.3d 709, 712 (7th Cir. 1998); ***Herzberg v. State of Ind.***, 2005 WL 1653993, at *2 (N.D. Ind. July 1, 2005). Younger does not apply to a § 1983 claim brought by a defendant in a state criminal case challenging the facts surrounding her arrest.

Frequently in a § 1983 case where the state criminal case is pending, the plaintiff raises a Fifth Amendment objection to being deposed. The court can address that claim if a discovery dispute arises. A case cannot be stayed based on speculation.

Based on the foregoing reasons, the Motion [DE 24] is **GRANTED in part and DENIED in part.** The court **DISMISSES** Count V of Complaint; Count VI of the Complaint; Count VIII of the Complaint; and Count IX of the complaint against the State of Indiana. ENTERED this 22nd day of February, 2021.

/s/ Andrew P. Rodovich  
United States Magistrate Judge